## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

IN RE:      SUSAN H FEDERICO          Case No.: 17-11157
          *aka Susan H Mazurak Federico*    Chapter 13
          Debtor

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

TO THE HONORABLE DIANE FINKLE:

U.S. Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates Series 2007-18N, together with its successors and assigns ("Movant"), your moving party in the within Motion, respectfully represents as follows:

1.     Movant is an entity with an address of U.S. Bank, N.A., c/o Nationstar Mortgage, LLC, 8950 Cypress Waters Blvd., Coppell, Texas 75019.

2.     The debtor, Susan H. Federico (the "Debtor"), is an individual with a mailing address of 2 Anthony Road, Barrington, Rhode Island 02806.

3.     The Debtor is the obligor pursuant to a promissory note (the "Note") dated August 10, 2007, in the original principal amount of $380,000.00.   A copy of the Note is annexed as Exhibit "A."

4.     To secure the Note the Debtor executed in favor of, and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS) (the "Mortgage," together with the Note and any other loan documents executed in connection therewith, the "Loan Documents") dated August 10, 2007, securing the Note and encumbering the property located at 2 Anthony Rd, Barrington, Rhode Island 02806 (the "Property").   A copy of the Mortgage is annexed as Exhibit "B."

5.     There is no other collateral to secure the Note.

6.     Movant is the current holder of the Loan Documents by virtue of an

Assignment of Mortgage, a copy of which is annexed as Exhibit "C."

7.      On July 7, 2017, the Debtor filed a petition under Chapter 13 of the United

States Bankruptcy Code in the United States Bankruptcy Court for the District of Rhode

Island.

8.      As of January 24, 2018, the total amount due and owing pursuant to the

Loan Documents was $574,488.03 in principal, accrued interest, late charges,

miscellaneous fees, and attorneys' fee and costs.

9.      There is a pre-petition arrearage in the amount of $123,838.82 due and

owing under the Loan Documents.

10.     As of January 24, 2018, the last payment received from the Debtor was on

July 9, 2012.

11.     As of January 24, 2018, there is a post-petition payment arrearage owing

under the Loan Documents in the amount of $11,215.44, minus a suspense amount of

$1,781.00.  This amount is exclusive of attorneys' fees, costs, and expenses in

connection with this Motion.

12.     The regular monthly payment due at this time is approximately $1,869.24.

13.     Based upon Schedule D and the amount presently due under the Loan

Documents, the total amount of encumbrances on the Property is approximately

$643,175.03, and includes the following additional liens:

    a.  *A scheduled lien to Real Time Resolutions, in the claim amount of*
       *$68,687.00.*

14.     The Debtor's Schedules list a fair market value for the Property of

$261,700.00.

15.     For purposes of this Motion only, Movant asserts that the liquidation value

2

of the Property is $244,254.65, calculated at the Debtor's value less a reasonable

realtor's fee of 6%; deed stamps; and costs incurred in a real estate closing estimated to

be $550.00.

16.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C.

§362(d)(1) for cause on the basis that the Debtor is in default of the payment obligations

resulting in an arrearage under the Loan Documents.

17.     Movant seeks relief from the automatic stay pursuant to 11 U.S.C.

§362(d)(2) as there is no equity in the Property and it is not necessary for an effective

reorganization.

WHEREFORE, Movant requests that the Court:

(1) grant relief from the section 362 automatic stay and the stay imposed by

Bankruptcy Rule of Procedure 4001(a)(3) for the purpose of exercising its various non-

bankruptcy rights and remedies including, without limitation:

a.  taking possession of the Property, obtaining a deed-in-lieu of foreclosure

and/or foreclosing the Mortgage

b.  taking such action as may be necessary to evict the Debtor or any occupant

from the Property.

(2)  order such other and further relief as may be just and proper.


MOVANT
By Its Attorney,

/s/ James G. Atchison
James G. Atchison, Esq.
RI Bar #7682
Shechtman Halperin Savage, LLP
1080 Main Street
Dated:  February 8, 2018      Pawtucket, Rhode Island 02860
(401) 272-1400 phone/(401) 272-1403 fax
jatchison@shslawfirm.com

## CERTIFICATION

Within fourteen (14) days after service, if served electronically, as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if served by mail or other excepted means specified, any party against whom such paper has been served, or any other party who objects to the relief sought, shall serve and file an objection or other appropriate response to said paper with the Bankruptcy Court Clerk's Office, 380 Westminster Street, 6th Floor, Providence, RI 02903, (401) 626-3100. If no objection or other response is timely filed, the paper will be deemed unopposed and will be granted unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise.

## RIGHT TO FORECLOSURE

Nationstar Mortgage services the loan on the property referenced in this Motion for Relief from Stay.  In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of "Nationstar Mortgage LLC d/b/a Mr. Cooper."

Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the Motion for Relief from Automatic Stay and the proposed Order were served upon the following parties by causing true and correct copies of the same to be sent via electronic notice or via first class mail postage pre-paid, as indicated, on February 8, 2018:

Via Electronic Notice:

Gary L. Donohue
Office of the U.S. Trustee
ustpregion01.pr.ecf@usdoj.gov

John Boyajian, Esq.
*Chapter 13 Trustee*
mail@13ritrustee.com

Russell D. Raskin, Esq.
*Debtor's Counsel*
mail@raskinberman.com

<u>Via First Class Mail</u>:

Susan H. Federico
2 Anthony Road
Barrington RI 02806

City of Barrington
282 County Road
Barrington, RI 02806

U.S. Bank, N.A.
c/o Nationstar Mortgage, LLC
8950 Cypress Waters Blvd.
Coppell, TX 75019

Real Time Resolutions
1349 Empire Central Drive S.
Dallas, TX 75247

<u>/s/ James G. Atchison</u>

UNITED STATES BANKRUPTCY COURT          R.I. Local Bankr. Form R
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - *
In re:   SUSAN H FEDERICO

                                                          BK No.  17-11157
                                    :                     Chapter  13

        Debtor(s)
                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - *

## RELIEF FROM STAY WORKSHEET – REAL ESTATE

I  Chastity Wilson - Assistant Secretary   (Name and Title) of U.S. Bank National
Association, as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates (hereinafter,
"Movant") hereby declare (or certify, verify, or state):

### BACKGROUND INFORMATION

1.   Real property address which is the subject of this motion:

     2 Anthony Road, Barrington, Rhode Island 02806.

2.   Lender Name: U.S. Bank National Association, as Trustee for Lehman XS Trust
     Mortgage Pass-Through Certificates

3.   Date of Mortgage:  8/10/2007.

4.   Post-Petition payment address:

     c/o Nationstar Mortgage, LLC, P.O. Box 619094, Dallas, TX 75261-9741.

5.   The manner in which the movant perfected its interest in the property:

     See Exhibits attached.

6.   All other material liens and encumbrances on the property:  None

### DEBT/VALUE REPRESENTATIONS

7.   Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of
     filing the motion: $574,488.03
     (Note: this amount may not be relied on as a "payoff" quotation.)

8.   Movant's estimated market value of the real property: $261,700.00.

9.  Source of estimated valuation: Schedule D

## STATUS OF DEBT AS OF THE PETITION DATE

10. Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date:

    A.  Amount of principal: $316,322.54
    B.  Amount of interest:  $58,790.00.
    C.  Amount of escrow (taxes and insurance): $44,698.49    Taxes:
                                                   Insurance:
    D.  Amount of forced placed insurance expended by Movant: $0.00.
    E.  Amount of Attorney's fees billed to Debtor(s) pre-petition:  $0.00.
    F.  Amount of pre-petition late fees, if any, billed to Debtor(s): $6,290.91.

11. Contractual interest rate: 7.50%  (If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: __.)

12. Please explain any additional pre-petition fees, charges or amounts charged to Debtor's/Debtor's account and not listed above:
BPO/ Appraisal:
Inspections:
(If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: __.)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT AS OF
## 1/24/2018

13. Date last payment was received: 7/09/2012

14. Alleged total number of payments post-petition from filing of petition through payment due on 8/01/2017 - 1/01/2018:  Six (6)

15. Please list all post-petition payments alleged to be in default:

## SCHEDULE OF PAYMENTS THAT WERE DUE:

| Date Payment Due | Payment Amount Due Post Petition |
|---|---|
| 8/01/2017 | $1,869.24 |
| 9/01/2017 | $1,869.24 |
| 10/01/2017 | $1,869.24 |
| 11/01/2017 | $1,869.24 |
| 12/01/2017 | $1,869.24 |
| 1/01/2018 | $1,869.24 |
| Totals: | $11,215.44 |

*Less Suspense Amount of $1,781.00:  $9,434.44*

## SCHEDULE OF PAYMENTS THAT WERE RECEIVED

| Date | Amount Received | Amount Applied to Principal and Interest | Amount Applied to Escrow | Late Fee Charged (if any) | Amount applied to legal fees or costs (specify) |
|---|---|---|---|---|---|
| 07/09/2012 | Unknown | | | | |
| Totals: | $ | $ | $ | $ | |

16. Amount of Movant's Attorneys fees billed to Debtor for the preparation, filing and prosecution of this motion: $850.00.

17. Amount of Movant's filing fee for this motion: $181.00.

18. Other Attorney's fees billed to Debtor post-petition: $0.00.

19. Amount of Movant's post-petition inspection fees: $0.00.

20. Amount of Movant's post-petition appraisal/broker's price opinion: $0.00.

21. Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00

22. Sum held in suspense by Movant in connection with this contract, if applicable: $1,781.00.

23. Amount of other post-petition advances or charges: i.e., taxes, insurance incurred by Debtor, etc.: $ _____.

24. Amount and date of post-petition payments offered by the debtor and refused by the
Movant: $_____ ;      Date(s): _____

Movant: $_____ ;      Date(s): _____.

Movant: $_____ ;      Date(s): _____.

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)     Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits A - C.)

(2)     Copies of documents establishing proof of standing to bring this Motion. (Exhibit _____.)

(3)     Copies of documents establishing that Movant's interest in the real property was perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibit _____.)

## CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS

I certify that the information provided in this worksheet and/or exhibits attached to this worksheet is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matter, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

I further certify that copies of any transactional documents attached to this worksheet as required by paragraphs 1, 2, and 3, immediately above, are true and accurate copies of the original

documents, I further certify that the original documents are in movant's possession, except as follows: _____.

I/we declare (or certify, swear, affirm, verify or state) that the foregoing is true and correct.

Executed on _____February 5, 2018_____ [date]

*Chastity Wilson*
[signature]

Chastity Wilson
Assistant Secretary of
Nationstar Mortgage LLC
Affiant
_____
[title]

Subscribed and sworn to before me this Feb 5, 2018 [date]

*Zekiah Bray*
Notary Public: [Name]

My commission Expires: 3. 14. 2020
[date]

ZEKIAH BRAY
Notary Public, State of Texas
Comm. Expires 03-14-2020
Notary ID 130580888

<span style="color:red">EXHIBIT A</span>

# ADJUSTABLE RATE NOTE

**(Six-Month LIBOR Index (As Published In *The Wall Street Journal*) – Negative Amortization)**

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.   THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.   THIS NOTE ALLOWS MONTHLY PAYMENT OPTIONS FOR AN INITIAL PERIOD.   THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).**

| August 10, 2007 | JOHNSTON | RHODE ISLAND |
|---|---|---|
| [Date] | [City] | [State] |

2 ANTHONY ROAD, BARRINGTON, RHODE ISLAND 02806

[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **380,000.00**          (this amount is called "Principal"), plus interest, to the order of Lender.  Lender is
**LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will accrue interest at a yearly rate of   **7.500**   %.  The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will accrue both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will make my monthly payments on the first day of each month beginning on **October 1 , 2007**          .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal, if any.  If, on   **September 1, 2037**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**LEHMAN BROTHERS BANK, FSB**
**230 PARK AVE, FLORHAM PARK, NJ 07932**
          or at a different place if required by the Note Holder.

**(B) Amount of My Monthly Payments.**

I will pay interest by making payments in the amount of U.S. $   **1,425.00**   (the "Minimum Payment") every month until either (i) the first Interest Change Date set forth in Section 4(A), or (ii) payment of the Minimum Payment on my next scheduled payment date would cause my principal balance to exceed the Maximum

*SHM*

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_Susan H. Mazurak_  8/10/07

| | |
|---|---|
| Borrower      Date | Borrower      Date |
| SUSAN H MAZURAK | |

Borrower                      Date            Borrower                      Date

Borrower                      Date            Borrower                      Date

Borrower                      Date            Borrower                      Date

Pay To The Order Of
Lehman Brothers Holding Inc
Without Recourse
Lehman Brothers Bank, FSB
By: _E. Todd Whittemore_
E. Todd Whittemore
Vice President

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC
BY _Paul E Sveen_
PAUL E SVEEN
AUTHORIZED SIGNATORY

EXHIBIT B

R

**LOAN** ████████████████████

X____ DEED OF TRUST/MORTGAGE

_____ TITLE POLICY

_____ ASSIGNMENT FROM
CORRESPONDENT (ASG1)

_____ ASSIGNMENT FROM
CORRESPONDENT (ASG2)

_____ MODIFICATION AGREEMENT

_____ ENDORSEMENT

_____ MORTGAGEE'S AFFIDAVIT

_____ OTHER_____

## FINAL DOCUMENTATION TRANSMITTAL

*TO:*     **LASALLE NATIONAL BANK**
2571 BUSSE ROAD, SUITE 200
ELK GROVE VILLAGE, IL  60007
ATTN: FINAL DOCUMENTS

BORROWERS NAME: *Mazurak*_____

COMMENTS:_____

COMPLETED BY *Karie Paben*_____

PHONE NUMBER:800-550-0508___Ext: *2079*
DATE *10- 9* -07___

# AURORA LOAN SERVICES
## *A Lehman Brothers Company*
*2617 College Park * P.O. Box 4000 * Scottsbluff, NE  69363-4000 * 800-550-0508 * Fax 303-728-7628*

INST: 2796   Bk: 1052 Pg: 81

Return To: **AURORA LOAN SERVICES, LLC**
**2617 College Park, PO Box 4000**
**Scottsbluff, NE 69363-4000**

Prepared By:    **MUSLIMAH BASHIR**
**AURORA LOAN SERVICES**
**3040 ROUTE 22 WEST**
**BRANCHBURG, NJ 08876**

**ESCROW #:**

————————————— [Space Above This Line For Recording Data]

# MORTGAGE

**MIN**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   **August 10, 2007** together with all Riders to this document.
(B) "Borrower" is

     **SUSAN H MAZURAK**

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

**LOAN #:**

**RHODE ISLAND** - Single Family - Fannie Mae/Freddie Mac
**UNIFORM INSTRUMENT WITH MERS**

**Form 3040 1/01 (rev. 11/02)**



-6A(RI) (0509)

Page 1 of 15      Initials: SHM

VMP Mortgage Solutions, Inc.

(D) "Lender" is  LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Lender is a  Federal Savings Bank
organized and existing under the laws of  UNITED STATES
Lender's address is  230 PARK AVE, FLORHAM PARK, NJ 07932

(E) "Note" means the promissory note signed by Borrower and dated  August 10, 2007
The Note states that Borrower owes Lender
THREE HUNDRED EIGHTY THOUSAND & 00/100                                      Dollars
(U.S. $  380,000.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  September 1, 2037    .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PREPAY/ |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the

County of Bristol :
[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.

Parcel ID Number:                                         which currently has the address of
**2 ANTHONY ROAD**                                                               [Street]
**BARRINGTON**                      [City] , Rhode Island      02806      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: SHM

Page 3 of 15                                         Form 3040  1/01 (rev. 11/02)

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its

VMP ®-6A(HI) (0608)

Page 7 of 15

Initials: S H M

Form 3040 1/01 (rev. 11/02)

secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or

any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but

such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

INST:     2796   Bk: 1052 Pg:    94

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____      _____ (Seal)
                                                     SUSAN H MAZURAK              -Borrower

_____      _____ (Seal)
                                                                        -Borrower

_____ (Seal)      _____ (Seal)
                                   -Borrower                                             -Borrower

_____ (Seal)      _____ (Seal)
                                   -Borrower                                             -Borrower

_____ (Seal)      _____ (Seal)
                                   -Borrower                                             -Borrower

INST: 2796 Bk: 1052 Pg: 95

**STATE OF RHODE ISLAND,**

County ss: *Bristol or Providence*

On this *10* day of *August 2007*, in *Barrington*,
in said County, before me personally appeared

*Susan H. Mazurok*

each and all to me known and known to me to be the person(s) executing the foregoing instrument and
acknowledged said execution to be his/her/their free act and deed.

_____
Notary Public

CHRISTOPHER B. MASELLI
Notary Public
My Commission Expires 2/28/2008



Initials: SHM

Form 3040   1/01 (rev. 11/02)

INST:          2796   Bk: 1052  Pg:      96

## EXHIBIT A

Those two certain lots or parcels of land with all the buildings and improvements thereon, situated on the easterly side of ANTHONY ROAD IN THE TOWN OF BARRINGTON COUNTY OF BRISTOL STATE OF RHODE ISLAND, shown as Lots numbered two hundred forty seven (247) and two hundred forty-eight (248) on that plat entitled, "Plat of House Lots in Brownville, R.I. belonging to T.W. Bicknell, J..A. Chedel, John Carpenter & Mrs. Eliz Cooke, Surveyed & platted by Cushing & Co. September 1871" and recorded in the Records of Land Evidence in said Town of Barrington in Plat Book 1 at Page 48.

The above premise maybe further described as Lots numbered one hundred forty seven (147) and one hundred forty eight (148) on Tax Assessors Plat Card Eighteen (18).

**EXHIBIT C**

INST: 1213  Bk: 1740 Pg: 264

Recording Requested By:
AURORA LOAN SERVICES

When Recorded Return To:

ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

_____

## CORPORATE ASSIGNMENT OF MORTGAGE

**Barrington Town, Rhode Island**
**SELLER'S SERVICING** ████████ "MAZURAK"
**OLD SERVICING #:  FC**

████████████████████████████

Date of Assignment: April 8th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNS at 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL  61834
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE  69361

Executed By: SUSAN H MAZURAK  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A  FEDERAL SAVINGS BANK
Date of Mortgage:  08/10/2007 Recorded:  08/17/2007  in Book/Reel/Liber: 1052 Page/Folio: 81 as Instrument No.: 2796  In Barrington Town, State of Rhode Island.

Property Address: 2 ANTHONY ROAD, BARRINGTON, RI  02806

   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of  with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNS
On April 8th, 2011

By: _____
LUCY A LANG, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

On April 8th, 2011, before me, LINDA D. PARKS, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared LUCY A LANG, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
LINDA D. PARKS
Notary Expires: 11/14/2011

GENERAL NOTARY - STATE OF NEBRASKA
LINDA D. PARKS
My Comm. Exp. 11/14/2011

(This area for notarial seal)

RECEIVED FOR RECORD
Apr 18,2011 01:11:40P
Barrington, R.I.
LINDA H. JAMES
TOWN CLERK

████████████████

*HS*HSALSI*04/08/2011 02:27:33 PM* ████████████████████

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Susan H Federico** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF RHODE ISLAND | | |
| Case number | **1:17-bk-11157** | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|---|

| 2.1 | **Nationstar Mortgage LLC** | Describe the property that secures the claim: | $316,323.00 | $261,700.00 | $54,623.00 |
|---|---|---|---|---|---|

Creditor's Name

**2 Anthony Road Barrington, RI 02806  Bristol County
Tax assessment
1st mortgage**

**8950 Cypress Waters Blvd
Coppell, TX 75019**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☑ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    **1st Mortgage**

| | **Opened 8/10/07 Last Active** | | |
|---|---|---|---|
| Date debt was incurred | **7/09/12** | Last 4 digits of account number | **0727** |

| 2.2 | **Real Time Resolutions** | Describe the property that secures the claim: | $68,687.00 | $261,700.00 | $68,687.00 |
|---|---|---|---|---|---|

Creditor's Name

**2 Anthony Road Barrington, RI 02806  Bristol County
Tax assessment
2nd mortgage
Arrears $25,107**

**1349 Empire Central Dr S
Dallas, TX 75247**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☑ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

8/02/17 2:33PM

Debtor 1  **Susan H Federico**                                              Case number (if know)   **1:17-bk-11157**
         First Name        Middle Name              Last Name

☐ Debtor 1 and Debtor 2 only            ☐ Statutory lien (such as tax lien, mechanic's lien)
☐ At least one of the debtors and another   ☐ Judgment lien from a lawsuit
☐ Check if this claim relates to a        ■ Other (including a right to offset)    **2nd mortgage**
   community debt

                                    **Opened
                                    8/01/07
                                    Last Active**
Date debt was incurred   **12/22/11**    Last 4 digits of account number    **2283**

| 2.3 | **Santander Consumer USA** | Describe the property that secures the claim: | $9,670.71 | $8,727.00 | $943.71 |
|-----|---|---|---|---|---|

Creditor's Name

> **2011 Mazda 3 69,000 miles
> Location: 2 Anthony Road,
> Barrington RI 02806
> Auto loan Santander $12,421**

**Po Box 961275
Fort Worth, TX 76161**

As of the date you file, the claim is: Check all that apply.

Number, Street, City, State & Zip Code

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

**Nature of lien.** Check all that apply.

■ Debtor 1 only
☐ Debtor 2 only                    ☐ An agreement you made (such as mortgage or secured car loan)
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another   ☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Check if this claim relates to a        ☐ Judgment lien from a lawsuit
   community debt                  ☐ Other (including a right to offset)

                                    **Opened
                                    2/01/14
                                    Last Active**
Date debt was incurred   **2/01/16**    Last 4 digits of account number    **1000**

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$394,680.71** |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$394,680.71** |

**Part 2:**  List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐   Name, Number, Street, City, State & Zip Code
    **Shechtman Halperin Savage**            On which line in Part 1 did you enter the creditor?   **2.1**
    **86 Weybosset St**
    **Providence, RI 02903-2800**            Last 4 digits of account number  ___

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy